# Green v. Adams.

*Mandamus to Require Mayor and Councilmen to Declare the Result of a Municipal Election.*

1. *Duty to count returns and declare result of election, ministerial, and not judicial.*—The duties of the mayor and councilmen under the charter of Fort Payne to open the election returns certified by the inspectors, "and from said certified returns declare the election of the persons who shall have received the highest number of legal votes to their respective offices," and of the mayor to "give certificates of election to their respective offices to the persons so found to be elected," are purely ministerial, and their discharge may be coerced by *mandamus.*

2. *Provision that council shall be the judge of the qualifications of its own members, construed.*—A provision of a city charter that "the city council shall judge of the qualifications, elections, and returns of its own members, and shall prescribe rules for the determination of contested elections," like the constitutional provision relating to the houses of the General Assembly, means, that each succeeding council shall pass upon the qualifications of members elected to it, and shall determine who have been elected to it, and not that the preceding council in office up to the time of its election shall discharge these functions in respect to its membership.

APPEAL from DeKalb Circuit Court.

Tried before Hon. J. A. BILBRO.

Appellees applied for *mandamus* to require appellants, the Mayor and Councilmen of Fort Payne, to open the returns of a municipal election, duly certified by the inspectors of election, declare the result, and issue certificates of election to relators whose election was shown by the returns. The respondents answered setting up that certain voters, illegally registered, had voted in the election, as shown by the returns, and that under the charter they were invested with the judicial duty of ascertaining who had received a majority of the legal votes cast for councilmen, and, sitting as judges, it was their right and duty to hear evidence and determine who had received such majority; that one of the relators voted for as councilman was not qualified to hold the office, &c. That they were proceeding to determine these mat-

ters when the petition was filed, &c.   The court granted
the peremptory writ of *mandamus*.   Respondents ap-
peal.

A. F. GOODHUE, for appellants, cited, *Hudman v.
Slaughter*, 70 Ala. 546; Acts 1890-1, p. 317; *People v.
Metzker*, 47 Cal. 524; *People v. Harshaw*, 60 Mich. 200;
*Doran v. Delong*, 48 Mich. 552; *State v. Rahway*, 33 N.
J. L. 111; *Echols v. State ex rel Dunbar*, 56 Ala. 135; 1
Dillon Mun. Cor. 202; *State v. Fitzgerald*, 44 Mo. 425;
2 Dillon Mun. Cor. (4 Ed.) 840; *State v. Newman*, 91
Mo. 445; *O'Farral v. Colby*, 2 Minn. 180; *State v. Mof-
fitt*, 5 Ohio, 358; 14 Am. & Eng. Encyc. of Law, (1st
Ed.), 219.

DORTCH & MARTIN, *contra*, cited, Acts 1890-91, p. 321;
*Hudman v. Slaughter*, 70 Ala. 546; 12 Am. St. Rep. 183;
60 Am. Dec. 169; 69 Ala. 265; 56 Ala. 136; 14 Am. and
Eng. Encyc. of Law, 106, §12, and note 3.

McCLELLAN, J.—The charter of Fort Payne con-
tains the following provisions as to municipal election
returns and the declaration of the results of such elec-
tions: "The * inspectors, immediately after the polls
are closed, shall proceed to count the ballots and com-
pare them with the poll lists. * * * * As soon as they
shall have finished the count and ascertained the num-
ber of votes received for each person, and for what of-
fice, they must certify the result of the election to the
Mayor and Councilmen of said city.   They must also
inclose the ballots cast, with the poll list, and the offi-
cial copy of the registration list, and the manuscript
registration list, and the certificates of registration sur-
rendered at the election, together with their tally sheets
and certificates of results, in the box in which were
placed the ballots received at such election, and care-
fully seal said box, deliver the same with its contents to
the mayor, who shall give his receipt for the same, stating
the condition of the box when it was received. The mayor
and city council shall, within three days after said elec-
tion, hold a meeting and open the boxes received from
the inspectors, and from said certified returns declare
the election of the persons who shall have received the
highest number of legal votes to their respective offices,

and the mayor shall give certificates of election to their respective offices to the person so found to be elected." The act then goes on to provide that the mayor and council shall hold and safely keep said poll list, ballots, tally sheets, registration certificates, certified returns and lists of registration for thirty days, when, if no contests have been instituted, they shall destroy the same, etc., etc. The act contains this further provision: "The city council shall judge of the qualifications, elections and returns of its own members, and shall prescribe rules for the determination of contested elections." Contests as to the election of all municipal officers except councilmen are determinable before the judge of probate of DeKalb county.—Acts 1890-91, pp. 313 *et seq.*

The question involved in this case arises under the charter provisions to which we have adverted, and is. whether the duties of the mayor and council in respect of declaring the result of elections and issuing certificates to the persons declared to be elected are ministerial or judicial. On the words of the statute imposing these duties upon the mayor and council, standing by themselves, it is quite clear, we think, that they are ministerial merely. The inspectors of elections are required to certify the results to the mayor and council; and the latter are required to declare *from said certified returns* the election of the person who shall have received the highest number of legal votes. Both the number of votes. received and the qualifications of the voters are determinable from the certified returns of the inspectors; and there is no right or discretion lodged in the mayor and council to go behind such returns for any purpose bearing upon the declaration of the persons elected and the certification of their election. The whole object of submitting the returns, ballots, registration lists and certificates; etc. to the mayor and council appears to be, first,. that there may be a formal declaration and certification of the results as shown by the certified returns from the inspectors; and, second, that all the papers may be safely kept for the purposes of contests should any be instituted within thirty days. Those are manifestly purely ministerial duties, the discharge of which may be coerced by *mandamus.*—*Hudmon v. Slaughter,* 70 Ala. 546.

But it is insisted that a different conclusion is en-

forced by the provision quoted last above, viz: "The city council shall judge of the qualifications, elections and returns of its own members, and shall prescribe rules for the determination of contested elections," at least in respect of the election, qualification, etc. of councilmen. The infirmity of this position lies in its assumption that the council here referred to is in its personnel the council which with the mayor is charged with the declaration of the results of election. This assumption is, we think, unwarranted and untenable. It is the *outgoing* mayor and council who declare the results of elections held to choose their successors, and it is the incoming council who judge of the qualifications, elections and returns of its own members. The words used, "shall judge of the qualifications, elections and returns of its own members" are those used in the Constitution of the State in respect to the houses of the General Assembly and their power to pass upon the eligibility, election, etc., of their own members; and they have always been understood in that connection to mean, and they do mean, that the houses, respectively, after they have assembled and been organized shall judge of their own membership, and not that the houses of an outgoing General Assembly shall pass upon the membership of houses which have been elected, but whose term of official existence has not commenced. If there should be, for instance, a call session of the General Assembly of 1896-97 after the election of the General Assembly of 1897-98 but before its convention at the time prescribed by law, it would never occur to anybody that such call session could at all inquire into or judge of the qualifications, elections and returns of members of the succeeding General Assembly. This would not be for each house to judge of the election, returns and qualifications of *its own* members, but for the houses of one General Assembly to judge of the membership of entirely distinct bodies, the houses of another General Assembly, elected but not yet in organized existence. And these words mean the same thing when applied to other bodies: That the body whose membership is drawn in question shall judge thereof for itself, and not its predecessor shall determine the qualifications, elections and returns of its membership. They mean when applied to the town councils of Fort Payne that each succeeding council shall pass upon the quali-

fications of members elected to it, and shall determine who have been elected to it, and not that the preceding council in office up to the time of its election shall discharge these functions in respect of its membership. Thus—as it must be—construed, the provision may be an unwise and impracticable one where all members of the council are elected at the same time and by the same constituency, in that the same grounds of contest may exist against all the members; but with that we have nothing to do. Whether a wise provision or not, or practical of execution or not, generally or in a given case, it confers no powers, judicial or otherwise, upon the outgoing council, and can afford them no excuse or justification for failure to declare the election of their successors as shown by the returns certified by the inspectors.

The alleged disqualification of one of the council because of non-residence shown by the returns to have been elected was a matter for the consideration and determination of the council to which he was elected. Neither the inspectors, nor the existing council had any right to pass upon that inquiry, nor to withhold the declaration and certification of his election on account of it.

Upon the foregoing considerations, we concur with the circuit judge in holding that the duties resting on the respondents were ministerial, and coercive by *mandamus;* and the judgment awarding the writ must be affirmed.

Affirmed.

